FILED
2006 Oct-27  PM 01:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

06 OCT 27 AM 11: 16

U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT OF
## THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| JERIDENE JACKSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | |
| | ) | |
| **SERRA CHEVROLET, INC., AND WELLS** | ) | |
| **FARGO FINANCIAL ACCEPTANCE, INC.,** | ) | CV-06-P-2281-S |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

**COMES NOW,** the Plaintiff, **JERIDENE JACKSON,** by and through her attorney of record, **RALPH J. BOLEN,** and files this Complaint, and would show this Honorable Court the following:

1.  This Court has jurisdiction of those claims under and by virtue of 15 U.S.C. § 1640, the Truth in Lending Act.

2.  The complaint includes claims for damages pursuant to the Truth in Lending Act, 15 U.S.C. § 1601 et seq., to recover actual damages, statutory damages, and cost plus a reasonable attorney fee, by reason of Defendant's violations of the Truth in Lending Act and Regulation Z thereunder, 12 C. F. R. § 226, et seq.; for Fraudulent Misrepresentation and/or Omission, Fraudulent Suppression, Unconscionability, Unjust Enrichment, Civil Conspiracy, Common Law Conversion, and Rescission under Alabama Law.

3.  Plaintiff requests the Court, pursuant to 28 U.S.C. § 1367, to exercise supplemental jurisdiction over her state law claims which arise out of the consumer credit loan relationship made the basis of her Federal Truth in Lending Act claims.

## STATEMENT OF THE PARTIES

*Jackson v. Serra Chevrolet, et al.*
*Complaint continued --*

4. That the Plaintiff, **Jeridene Jackson**, is over the age of nineteen (19) years, a resident citizen of Jefferson County, Alabama, and was so at the time of the incident made the basis of this lawsuit.

5. That the Defendant, **Serra Chevrolet, Inc.**, is an Alabama Corporation doing business in Jefferson County, Alabama as a new and used automobile dealer.

6. That the Defendant, **Wells Fargo Financial Acceptance, Inc.**, is a foreign corporation that is doing business in Jefferson County, Alabama.

## BACKGROUND FACTS

7. That on or about to-wit: the second (2nd) week of October, 2005, the Plaintiff received by U. S. Mail a document that appeared to be a check drawn on Wells Fargo Financial Acceptance, Inc. made payable to Serra Chevrolet, Inc. in the amount of Thirty Thousand Dollars ($30,000.00).

8. That after the Plaintiff received the document, a salesman from Serra Chevrolet, Inc. contacted the Plaintiff by telephone and secured enough information to run a credit report on the Plaintiff.

9. That on or about to-wit: October 27, 2005, the Plaintiff went to Serra Chevrolet, Inc. to purchase a vehicle. A salesman at Serra Chevrolet, Inc. took the keys to her 2002 Ford Taurus and showed her one vehicle, a 2003 Nissan Xterra.

10. That the Plaintiff inquired about a 2003 Jeep that she had seen at Serra Chevrolet, Inc., and the salesman told her that "she could not afford the Jeep."

11. That the Plaintiff test drove the Nissan Xterra and told the salesman she liked it.

12. That the salesman took her inside, and he already had the paperwork prepared for the Plaintiff to sign.

13. That the Plaintiff discussed the payments for the Nissan Xterra, and they were to be Four Hundred Twenty Dollars ($420.00) per month.

*Jackson v. Serra Chevrolet, et al.*
*Complaint continued --*

14. That the Plaintiff agreed to purchase the vehicle and signed the paperwork. The salesman had the contracts stacked on top of each other so the Plaintiff did not see anything but the signature lines that had "sign here" arrows indicating where she was to sign.

15. That in two (2) days, to-wit: October 29, 2005, the Plaintiff received a payment book from Wells Fargo Financial Acceptance, Inc. that had a payment in the amount of Five Hundred Sixty Seven Dollars and Fifty Seven Cents ($567.57)

16. That day, to-wit: October 29, 2005, the Plaintiff took the Nissan Xterra back to Serra Chevrolet, Inc. and told the receptionist that she did not want the vehicle and left the Nissan Xterra at Serra Chevrolet, Inc..

17. That the next day, to-wit: October 30, 2005, the Nissan Xterra was at the Plaintiff's home in her driveway when she woke up.

18. That at all times relevant hereto, Serra Chevrolet, Inc. and/or Wells Fargo Financial Acceptance, Inc. in the ordinary course of their business, regularly extended, offered to extend, arranged for the extension of, or offered to arrange for the extension of consumer credit for which a finance charge was imposed.

19. That the sales documents had a credit life contract that the Plaintiff signed which is attached hereto and marked as Exhibit "A".

20. That the sales documents had a gap insurance contract that the Plaintiff signed, attached hereto and marked as Exhibit "B".

21. That the sales documents had a service contract that the Plaintiff signed, attached hereto as Exhibit "A".

## COUNT I
## TRUTH IN LENDING VIOLATION

22. Plaintiff incorporates by reference all of the preceding paragraphs as if fully set out herein.

*Jackson v. Serra Chevrolet, et al.*
*Complaint continued --*

23.  This count is a claim for damages by way of recoupment, pursuant to the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq., to recover actual damages, statutory damages, and cost including reasonable attorneys fees, by reason of the Defendants' violation of the TILA and Regulation Two (2) thereunder, 12 C.F.R. § 226.

24.  At all times relevant hereto, Wells Fargo Financial Acceptance, Inc. and/or Serra Chevrolet, Inc. in the ordinary course of their business regularly extended, offered to extend, arranged for the extension of, or offered to arrange for the extension of consumer credit for which a finance charge was imposed.

25.  The Plaintiff and the Defendants entered into a consumer credit transaction on or about October 27, 2005, which was payable in seventy-two (72) installments beginning on December 11, 2005, for which a finance charge was imposed. A copy of said contract is attached hereto as Exhibit "A".  Upon information and belief no TILA compliant disclosure statement other than Exhibit "A" was provided to the Plaintiff by the Defendants prior to the consummation of this credit transaction.

26.  Said extension of credit as reflected on Exhibit "A", was for a disclosed amount financed of Twenty Three Thousand Four Hundred Thirteen Dollars and Thirty Six Cents ($23,413.36), for which a disclosed finance charge of Seventeen Thousand Four Hundred Fifty One Dollars and Sixty Cents ($17,451.60) was imposed totaling payments of Forty Two Thousand Eight Hundred Sixty Five Dollars and Four Cents ($42,865.04), and disclosed an Annual Percentage Rate (APR) of 20.15 percent (%).

27.  The Plaintiff avers that Regulation Z, § 226.17(a)(1) requires the creditor to "make the disclosures required by this sub part clearly and conspicuously in writing in a form that the consumer may keep.  The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related [N 37] to the disclosures required under § 226.18 and § 226.18(n)."

28.  The Plaintiff avers that Regulation Z § 226.18(n) mandates the creditor to disclose the "items required by § 226.4(d) in order to exclude certain insurance premiums and debt cancellation fees from the finance charge."

29.  The Plaintiff avers that Regulation Z § 226.4 (b)(10) declares premiums for GAP Insurance coverage to be part of the finance charge and only may be excluded from the finance charge provided the creditor meets all of the conditions set forth in § 226.4 (d)(1)(i-iii).

*Jackson v. Serra Chevrolet, et al.*
*Complaint continued --*

30. The Plaintiff avers that the Defendants unlawfully included charges in the amount financed of Three Hundred Thirty Dollars ($330.00) for GAP insurance premiums, due to the failure to meet the conditions set forth in Regulation Z, § 226.4 (d)(1)(i-iii).

31. The tolerance for errors in disclosing of the Finance Charge for a loan of this type is $10.00 pursuant to 12 C.F.R. § 226.18 (d)(2). Defendants failure to properly disclose this amount exceeds the tolerance limit and triggers the statutory penalties required by 15 U.S.C. § 1640 (a)(3) and the compensatory damages of 15 U.S.C. § 1640 (a)(1).

32. Due to Defendants failure to accurately disclose the Finance Charge, as aforesaid, Defendants failed to accurately disclose the Annual Percentage Rate as defined in 15 U.S.C. § 1606 and Regulation Z §226.14, as required by 15 U.S.C. § 1638, and Regulation Z § 226.18 by understating the APR by more than the one-eighth of one percent (.0125) allowable tolerance.

33. The Plaintiff avers that she relied upon these untrue disclosures to her detriment and did not get the benefit of their bargain.

34. The Plaintiff avers that this violation is objectively apparent on the face of the TILA loan agreement (Exhibit A) making any Creditor or other entity deemed an Assignee of the contract liable for such violations of the Act, pursuant to 15 U.S.C. § 1641 (a).

WHEREFORE, premises considered, the Plaintiff demands judgment for compensatory and statutory damages pursuant to 15 U.S.C. § 1640 (a)(3) and 15 U.S.C. § 1640 (a)(1) of twice the actual finance charge, capped at One Thousand Dollars $1,000.00, for compensatory damages of Three Hundred Thirty Dollars ($330.00) plus interest at the contract rate, and costs and attorneys fees.

# COUNT II
## FRAUDULENT MISREPRESENTATION AND/OR OMISSION

*Jackson v. Serra Chevrolet, et al.*
*Complaint continued --*

35. Plaintiff incorporates by reference all of the preceding paragraphs as if fully set out herein.

36. Defendants made the above described and the following false, misleading, and deceptive representations to Plaintiff and/or omitted to state material facts in connection with purchasing the automobile, in the following respects:

a. Defendants failed to disclose that the Plaintiff's payments would be Five Hundred Sixty Seven Dollars and Fifty Seven Cents ($567.57) and in fact they told her that her payments would be Four Hundred Twenty Dollars ($420.00) per month.

b. Defendants failed to disclose to the Plaintiff that she had purchased Gap insurance for the automobile.

c. Defendants failed to disclose to the Plaintiff that she had purchased a service contract for the automobile.

d. Defendants failed to disclose to the Plaintiff that she had purchased credit life insurance for the automobile.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages and punitive damages as determined by the trier of fact; plus costs of court. Plaintiff further prays for such other and different relief she may be entitled to the premises considered.

## COUNT III
## FRAUDULENT SUPPRESSION

37. Plaintiff incorporates by reference all of the preceding paragraphs.

38. Defendants made the above described and the following fraudulent suppressions to the Plaintiff in the following respects:

a. Defendants concealed or failed to disclose to the Plaintiff the amount of the monthly payments to purchase the automobile.

*Jackson v. Serra Chevrolet, et al.*
*Complaint continued --*

b. Defendants concealed or failed to disclose to the Plaintiff that she was purchasing a service contract.

c. Defendants concealed or failed to disclose to the Plaintiff the total cost of the automobile.

d. Defendants concealed or failed to disclose to the Plaintiff that she was purchasing Gap insurance.

e. Defendants concealed or failed to disclose to the Plaintiff that she was purchasing credit life insurance.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages and punitive damages as determined by the trier of fact; plus costs of court. Plaintiff further prays for such other and different relief she may be entitled to the premises considered.

## COUNT IV
## UNCONSCIONABILITY

39. Plaintiff hereby incorporates by reference all of the preceding paragraphs as if fully set out herein.

40. The above described conduct, acts, and omissions of the Defendants constitute unconscionable practices, individually and collectively.

41. Defendants' unconscionable acts and omissions were the proximate cause of damages to the Plaintiff, and therefore, she is entitled to recover damages.

WHEREFORE, Plaintiff demands judgment against thē Defendants for compensatory damages and punitive damages as determined by the trier of fact; plus costs of court. Plaintiff further prays for such other and different relief she may be entitled to the premises considered.

*Jackson v. Serra Chevrolet, et al.*
*Complaint continued --*

## COUNT V
## UNJUST ENRICHMENT

42. Plaintiff incorporates by reference all of the preceding paragraphs as if fully set out herein.

43. At all times material hereto, Defendants have intentionally, negligently and/or wantonly retained money from Plaintiff and have unjustly enriched themselves at the expense of the Plaintiff as described herein.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages and punitive damages as determined by the trier of fact; plus costs of court. Plaintiff further prays for such other and different relief she may be entitled to the premises considered.

## COUNT VI
## CIVIL CONSPIRACY

44. Plaintiff incorporates by reference all of the preceding paragraphs as if fully set out herein.

45. Plaintiff avers that the Defendants conspired together through their joint solicitation of the Plaintiff to induce her to purchase an automobile. During the purchase, the Defendants committed unlawful acts that proximately caused the Plaintiff to be damaged.

46. Plaintiff avers that as a result of the Defendants conspiracy, she was caused to suffer mental anguish and embarrassment.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages and punitive damages as determined by the trier of fact; plus costs of court. Plaintiff further prays for such other and different relief she may be entitled to the premises considered.

*Jackson v. Serra Chevrolet, et al.*
*Complaint continued --*

## COUNT VII
## COMMON LAW CONVERSION

47. Plaintiff incorporates by reference all of the preceding paragraphs as if fully set out herein.

48. Plaintiff was solicited by the Defendants in that she received by United States mail, a document that appeared to be a check drawn on Wells Fargo Financial Acceptance, Inc. in the amount of Thirty Thousand Dollars ($30,000.00) made payable to Serra Chevrolet, Inc.. Plaintiff was then reached by telephone in her home by employees of Serra Chevrolet, Inc. to use the document to purchase a vehicle at Serra Chevrolet, Inc..

49. Plaintiff purchased the vehicle from Serra Chevrolet, Inc. on or about October 27, 2005 and returned the vehicle on or about October 30, 2005. Employees at Serra Chevrolet, Inc. returned the subject vehicle to her home sometime during the night of to-wit: October 30, 2005 and October 31, 2005.

50. Plaintiff traded her 2002 Ford Taurus automobile to Serra Chevrolet, Inc. when she purchased the 2003 Nissan Xterra. Serra Chevrolet, Inc. refused to return her 2002 Ford Taurus automobile. Serra Chevrolet, Inc. unlawfully converted to their own use Plaintiff's 2002 Ford Taurus automobile.

51. Plaintiff avers that as a proximate consequence of the unlawful conversion as aforesaid, she was injured and damaged.

**WHEREFORE,** Plaintiff demands that the contract be rescinded and demands judgment against Serra Chevrolet, Inc. and Wells Fargo Financial Acceptance, Inc. for an amount to be determined by the trier of fact; plus costs of court. Plaintiff further prays for such other and different relief she may be entitled to the premises considered.

## COUNT VIII
## RESCISSION

52. Plaintiff incorporates by reference all of the preceding paragraphs as if fully set out herein.

*Jackson v. Serra Chevrolet, et al.*
*Complaint continued --*

53. Plaintiff was solicited by the Defendants by United States mail by Wells Fargo Financial Acceptance, Inc. and direct contact by telephone by employees of Serra Chevrolet, Inc..

54. Plaintiff attempted to return the vehicle and rescind the contract within three (3) days of purchasing the vehicle.

55. The Defendants refused to accept the vehicle they sold her and refused to rescind the contract.

56. Plaintiff avers that as a proximate consequence of the Defendants refusing to rescind the contract, she was injured and damaged.

**WHEREFORE,** Plaintiff demands the contract be rescinded and be held to be null and void and demands judgment against the Defendants for an amount to be determined by the trier of fact, plus costs. Plaintiff further prays for such other and different relief she may be entitled to the premises considered.

Respectfully Submitted,

RALPH J. BOLEN (BOL003)
Attorney for the Plaintiff
3928 Montclair Road, Suite 134
Mountain Brook, Alabama 35213-2415
Telephone: (205) 879-9493
Facsimile: (205) 879-9495.

*Jackson v. Serra Chevrolet, et al.*
*Complaint continued --*

Plaintiff hereby demands a trial by a duly struck jury

RALPH J. BOLEN

*Plaintiff's Address:*

**Jeridene Jackson**
921 4th Court
Birmingham, AL 35204

*Defendants' Addresses:*

Anthony F. Serra
Registered Agent for:
**Serra Chevrolet, Inc.**
9709 Parkway E, Suite D
Birmingham, AL 35215-7854

CSC Lawyers Incorporating Service, Inc.
Registered Agent for:
**Wells Fargo Financial Acceptance, Inc.**
150 South Perry Street
Montgomery, Alabama 36104

Christopher J. Adams
President for **Wells Fargo**
**Financial Acceptance, Inc.**
800 Walnut Street
Des Moines, IA 50309-3605

# RETAIL INSTALMENT SALE CONTRACT
## GMAC FLEXIBLE FINANCE PLAN

Dealer Number ____   Contract Number ____

| Buyer (and Co-Buyer) - Name and address (include county and zip code) | Creditor (Seller name and address) |
|---|---|
| JERIDERE JACKSON<br>921 4TH CT<br>BIRMINGHAM AL 35204 | SERRA CHEVROLET, INC.<br>1170 CENTERPOINT PKWY<br>BIRMINGHAM AL 35215 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay us, the Creditor, the Amount Financed and Finance Charge according to the payment schedule shown below. We will figure the Finance Charge on a daily basis.

| New or Used | Year | Make and Model | Vehicle Identification No. | Primary Use for Which Purchased |
|---|---|---|---|---|
| | | NISSAN TRUCK | | ☐ personal, family, or household  ☐ agricultural<br>☐ business _____ ☐ _____ |
| USED | 2003 | XTERRA | 5N1ED28T83C650391 | x |

Your trade-in is a: _____ Make FORD Model TAURUS

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of $ 2000.00 is |
|---|---|---|---|---|
| 20.15 % | $17451.68 | $23413.36 | $40865.04 | $42865.04 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | Or as Follows |
|---|---|---|---|
| 72 | $ 567.57 | Monthly beginning 12/11/05 | |

**Late Charge.** If a payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late, with a minimum charge of $10 and a maximum charge of $100.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, and security interest.

### ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| 1 Cash price (including any accessories, services, and taxes) | | $ 22777.76 | (1) |
| 2 Total downpayment = (if negative enter "0" and see line 4H below) | | | |
|   Gross trade-in $ 8466.38 -payoff by seller $ 6466.38 | | | |
|   = net trade-in $ 2000.00 + cash $ N/A | | | |
|   + other (describe) $ N/A | $ 2000.00 | | (2) |
| 3 Unpaid balance of cash price (1 minus 2) | | $ 20777.76 | (3) |
| 4 Other charges including amounts paid to others on your behalf (Seller may keep part of these amounts.): | | | |
|   A Cost of optional credit insurance paid to the insurance company or companies | | | |
|     Life $ N/A | | | |
|     Disability $ N/A | $ N/A | | |
|   B Other insurance paid to the insurance company | $ 330.00 | | |
|   C Official fees paid to government agencies (describe) | $ N/A | | |
|   D Government taxes not included in cash price (describe) | $ N/A | | |
|   E Government license and/or registration fees | $ N/A | | |
|   F Government certificate of title fees | $ 16.50 | | |
|   G Other charges (Seller must identify who is paid and describe purpose.) | | | |
|     to FIDELITY for SERVICE CONTRACT $ 2000.00 | | | |
|     to SERRA CHEVROLET for DOC FEE $ 289.10 | | | |
|     to _____ for _____ $ N/A | | | |
|     to _____ for _____ $ N/A | | | |
|     to _____ for _____ $ N/A | | | |
|   H Net trade-in payoff to _____ | $ N/A | | |
|   Total other charges and amounts paid to others on your behalf | | $ 2635.60 | (4) |
| 5 Amount financed (3 + 4) | | $ 23413.36 | (5) |

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose or you may provide it through someone else who is acceptable to us. You may provide the required insurance through an existing policy. You may also buy it through someone independent of us. You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other insurance will not be a factor in the credit approval process.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

**Optional Credit Insurance.**

☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)

Premium:
  Credit Life $ N/A
  Credit Disability $ N/A

_____
(Insurance Company)

_____
(Home Office Address )

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Insurance.**

☒ GAP COVERAGE  Type of Insurance _____  Term 72

Premium $ 330.00

STONEBRIDGE (Insurance Company)

1100 JOHNSON FERRY RD, STE 300-A (Home Office Address) LA

I want the insurance checked above.

X _Jeridere Jackson_  Date 10/27/05
Buyer Signature

X _____  Date _____
Co-Buyer Signature

ANY INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and we must sign it. No oral changes are binding.

Buyer Signs X _Jeridere Jackson_   Co-Buyer Signs X _____

If any part of any contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See back for other important terms. If you assign this contract to General Motors Acceptance Corporation (GMAC), the GMAC Dispute Resolution Agreement you sign with this contract will apply to claims related to this contract.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the finance charge.**

You agree to the terms of this contract and the GMAC Dispute Resolution Agreement. You confirm that before you signed this contract and the GMAC Dispute Resolution Agreement, we gave them to you, and you were free to take them and review them. You confirm that you received a completely filled-in copy of these documents when you signed them.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Buyer Signs X _Jeridere Jackson_  Date 10/27/05   Co-Buyer Signs X _____  Date _____

**Co-Buyers and Other Owners** - A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____  Date 10/27/05  Address _____

Creditor Signs _____  Date 10/27/05  By X _____  Title _____

Z109 FR AL 7/2004 (For use in the State of Alabama) (1 of 4)   Notice: See Other Side
Copyright 2000 General Motors Acceptance Corporation. All Rights Reserved.

DUPLICATE ORIGINAL - BUYER'S COPY

## OTHER IMPORTANT AGREEMENTS

**1. FINANCE CHARGE AND PAYMENTS**

**a.** How we will figure Finance Charge. The Finance Charge is figured on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b.** How we will apply payments. We will apply each payment first to the earned and unpaid part of the Finance Charge, and then to the unpaid part of the Amount Financed, and to other amounts you owe under this contract.

**c.** How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d.** You may refinance a balloon payment. A balloon payment is a scheduled payment that is more than one and one half times as large as the value of your earlier scheduled payments. If you are buying the vehicle primarily for personal, family, or household use, you have the right to refinance the balloon payment when it is due without penalty. You may refinance on terms no less favorable than the terms of this contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

**2. YOUR OTHER PROMISES TO US**

**a.** If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b.** Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c.** Security interest. You give us a security interest in:
1. The vehicle and all parts or goods installed in it;
2. All money or goods received (proceeds) for the vehicle;
3. All insurance, maintenance, service, or other contracts we finance for you; and
4. All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. You also secures your other agreements in this contract. This will make sure the title shows our security interest (lien) in the vehicle.

**d.** Insurance you must have on the vehicle. You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we decide, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge at the Annual Percentage Rate shown on the front of this contract.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e.** What happens to returned insurance, maintenance, service, or other contract charges. If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. YOU MAY PREPAY**

You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**4. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a.** You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

**b.** You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
1. You do not pay any payment on time;
2. You start a proceeding in bankruptcy or one is started against you or your property; or
3. You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c.** You may have to pay collection costs. If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits. The maximum attorney's fee you will pay will be 15% of the amount you owe.

**d.** We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e.** How you can get the vehicle back if we take it. If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f.** We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at the highest lawful rate until you pay.

**g.** What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**h.** Dishonored Check Charge. If you try to pay any portion of an amount you owe with a check that is dishonored, you will repay us the charge we pay the bank for the return of the dishonored check. At our option, instead of asking you to repay us the charge we pay the bank, we may charge you $27 or the highest amount the law permits.

**5. WARRANTIES SELLER DISCLAIMS**

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**6. Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation:**
Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**7. APPLICABLE LAW**

Federal law and Alabama law apply to this contract.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

EXHIBIT

**SERRA CHEVROLET HYUNDAI KIA**
1170 Centerpoint Pkwy
BIRMINGHAM, ALABAMA 35215
Tel. 205-853-2906

**RETAIL BUYERS ORDER**

CUST. NO. _____

DATE __10/27/2005__

HOME PHONE __(205)785-3597__

THE UNDERSIGNED PURCHASER __JERIDERF JACKSON__     WORK PHONE __(205)620-9999__

ADDRESS __921 4TH CT BIRMINGHAM AL__     ZIP __35204__

hereby agrees to purchase from conditions and agreements contained herein, the following:

hereinafter referred to as Seller, subject to all terms.
☐ NEW    x)☐ USED    ☐ DEMONSTRATOR

| YEAR | MAKE | MODEL | DOORS | CYL | SERIAL # | | | | PRESENT MILEAGE |
|------|------|-------|-------|-----|----------|--|--|--|------|
| 2003 | NISSAN TRUCK | XTERRA | 4| | 5N1ED28Y03C650391 | | | | 37908 |
| COLOR | STOCK # | COUNTY | SALESPERSON # NAME | | S # ll NUMBER | SALESPERSON #2 NAME | | S #l NUMBER | |
| ORANGE | 7404C | JEFFERSON | BARRY R KNIGHT | | 1135 | | | | |

| | | | |
|--|--|--|--|
| LIST/MSRP | | $ | 22250.00 |
| **PROTECTION PACKAGE (NEW ONLY)** | | | |
| SOUND DEADENER, PAINT & SEALANT | | 588 | 00 |
| INTERIOR PACKAGE | | | |
| **OPTIONAL EQUIPMENT:** | | | N/A |
| AIR CONDITIONING | | | N/A |
| CASSETTE | | | N/A |
| | | | N/A |
| | | | |
| | | | |
| CREDIT LIFE | | | 1404.87 |
| **TOTAL SALES PRICE** | | | 23654.87 |
| **TRADE-IN ALLOWANCE & DISCOUNT** | | | 8465.38 |
| **DIFFERENCE** | | | 15189.49 |
| CLERICAL FEES | | | 289 | 10 |
| SUB-TOTAL | | | 15478.59 |
| ALABAMA SALES TAX | | | 527.76 |
| TITLE FEE | | | 16 | 50 |
| ALABAMA LICENSE TAX | | | N/A |
| SUB-TOTAL | | | 16022.85 |
| AMOUNT OWING ON TRADE-IN | | | 6465.38 |
| TOTAL AMOUNT DUE | | | 22488.23 |
| DEPOSIT WITH ORDER: Rec.# | | | N/A |
| CASH ON DELIVERY: Rec.# | | | N/A |
| REBATE | | | N/A |
| **UNPAID BALANCE DUE** | | $ | 22488.23 |

**DESCRIPTION OF TRADE-IN**

| YEAR | MAKE | MODEL | DOORS | COLOR | |
|------|------|-------|-------|-------|--|
| 2002 FORD | TAURUS | | | BLUE | |
| CYL 6 | 1FAFP55U42A145706 | | MILEAGE | 74307 | |

ACCOUNT # _____

TRADE-IN LIEN HOLDER __FORD CREDIT__

ADDRESS _____

AMOUNT OF PAY OFF __6465.38__ QUOTED BY _____

VERIFIED BY _____ GOOD THRU _____

As part of the purchase price, the Purchaser does hereby grant, bargain sell and convey the above described automobile to Seller. Purchaser warrants title to and possession of said automobile to be in him, and that same is free from encumbrances, and all debts, except the pay off amount stated above. Purchaser further warrants his good right to sell and deliver the above described automobile. **PURCHASER AGREES TO BE RESPONSIBLE FOR THE DIFFERENCE IN PAYOFF QUOTED ABOVE AND ACTUAL PAYOFF.**

**ARBITRATION AGREEMENT**

The Undersigned Purchaser and Seller, voluntarily WAIVE ANY RIGHT TO A JURY TRIAL, and further agree as follows:
(1) That the motor vehicle described in this sale document has been heretofore traveling in interstate commerce and has an impact upon interstate commerce.
(2) That in the event of any dispute(s), between the parties hereto or in the event of any dispute(s) arising out of or related to this contract, (including but not limited to the terms of the agreement, the condition of the motor vehicle sold, the conformity of the motor vehicle sold to the contract, the representations, promises, undertakings or covenants made by Seller, inc. in connection with the sale of the motor vehicle, or otherwise dealing with a motor vehicle, any terms of financing in connection therewith, or any terms of any credit life and/or disability insurance)(or)(sale) simultaneously herewith, or extended service or maintenance agreement(s), that Seller, and the purchaser agree to submit such dispute(s) to binding arbitration, pursuant to the provisions of 9 U.S.C. 1, et. seq. and according to the commercial rules of the American Arbitration Association then existing in Alabama.
(3) That in the event any dispute arises between purchaser and seller, its officers, agents and employees, the said dispute will be submitted to binding arbitration pursuant to 9 U.S.C. et seq. and according to the commercial rules of the American Arbitration Association then existing in Alabama.
(4) (A) That in the event any dispute arises between the parties, as to the conformity or condition of the motor vehicle, the parties will permit a third party (to be mutually agreed upon), to inspect the motor vehicle to determine its conformity and condition, and that the findings of such third-party shall be binding upon Seller, and the purchaser, in connection with any litigation, arbitration or request for adjustment, pursuant to the provisions of the 1975 code of Alabama.
(B) In the event Seller and the purchaser cannot agree upon a third-party to conduct such inspection, either party shall have the right to petition any court of competent jurisdiction, or panel of arbitrators, to appoint an expert to act as such third party.
(C) The cost of such third-party inspection shall be borne equally by Seller and the purchaser or as may be directed by any court or panel of arbitrators.
(5) This Arbitration agreement constitutes part of your retail buyers order.

**DISCLAIMER OF WARRANTIES**

NEW VEHICLE: All warranties on this new vehicle are those offered by the Manufacturer. The Seller hereby expressly disclaims all warranties, either expressed or implied, including any implied warranty of MERCHANTABILITY or FITNESS FOR A PARTICULAR PURPOSE, and the Seller neither assumes nor authorizes any person to assume for it any liability in connection with the sale of the vehicle. This disclaimer by the Seller in no way affects the terms of the Manufacturer's warranty. Buyer shall not be entitled to recover from the Selling Dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profits, or income, or any other incidental damages.
Purchaser hereby acknowledges that he has read and understands the above and that Seller has made no representation to him prior to the purchase the factory warranty which Purchaser understands constitutes all of the warranties with respect to the sale of this new vehicle.
USED VEHICLE: In the event that the vehicle being purchased is a used vehicle, Purchaser hereby acknowledges that the above disclaimer will also apply to said used vehicle. Except as may be expressed completely in writing by the Seller on separate instrument delivered to the Purchaser, all used vehicles are sold "As-is-with no warranty." Purchaser hereby acknowledges that Seller has made available to him and Purchaser has read any limited warranty delivered to him by separate instrument and that said limited warranty constitutes all of the warranties with respect to the sale of this used vehicle and that any implied warranty that may not be waived by law if limited to the duration of said limited warranty. Purchaser understands that any new or extended Manufacturer's warranties on used vehicles are not the responsibility of the Seller.

**ADDITIONAL TERMS AND CONDITIONS**

This order shall not become binding upon either the Purchaser or the Seller until the vehicle described above is physically delivered and Purchaser has received the Disclosures required under Federal Law, if applicable, in the case of a credit sale, the Seller shall not be obligated to sell until a finance source approves this Order and agrees to purchase a retail installment contract between the Purchaser and the Seller based on this Order.
As a part of the New Car Pre-Delivery Procedures or Used Car Reconditioning of the Seller all body repairs in an amount not exceeding five hundred dollars ($500.00) have been made prior to the delivery of the described automobile. Purchaser waives notice concerning said repairs and accepts the automobile as delivered. Any body repairs made by the Seller exceeding five hundred dollars ($500.00) have been set out herein or in a separate disclosure statement if said repairs were made by the Seller, or were made known to it and said repairs are hereby accepted and approved by Purchaser.
The trade-in allowance shown in this Order is the amount that the Seller agrees to allow at the time the Purchaser accepts delivery and completes the Order. In the event of any disagreement over the value of the car traded in, the Seller will not be liable for any more than the wholesale market value as determined by the loan value of the automobile as shown in the Black Book less the estimated cost of reconditioning same.
It is agreed and understood that the legal title to the described automobile does not pass to Purchaser until the entire purchase price is paid in full and also until the check given by the Purchaser for all or part of the payment for said automobile clears the bank on which it is drawn.
The Purchaser agrees that all provisions stated hereon are part of this Order and that this Order supersedes any prior agreement and is the complete and exclusive agreement on the subject matters covered by this Order, Further, Purchaser and Seller agree that no person is authorized to make any representations beyond those expressed in this Order. Verbal promises by salesman are not valid and any promises or understandings not herein specified in writing are hereby expressly waived by the Purchaser.
The Purchaser warrants that he is of majority age and further warrants that all statements made by him are true and correct and that the Seller may accept them as being true representations of existing facts.
Purchaser has read all the provisions of this Order including the Disclaimer of Warranties. Purchaser acknowledges that he has received a true copy of this Order and that the Order has been completely filled-in and signed.
CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

Purchaser Signature _____

ACCEPTED
BY _____

THIS ORDER IS NOT VALID UNLESS ACCEPTED BY AN AUTHORIZED OFFICER OF THE COMPANY

## Additional Terms of the Retail Buyers Order

You have been given an opportunity to purchase the property on the front side of this document. By accepting the offer, you agree this contract will be governed by the law of the State of Alabama, including the uniform commercial code. You agree that this and any other written agreement pertaining to the purchase contain all of the terms and provisions of your agreement with us and that we have not made any oral warranties or promises regarding this purchase. BY SIGNING BELOW YOU AGREE TO THE FOLLOWING TERMS, PROVISIONS, AND DISCLOSURES. PLEASE READ CAREFULLY BEFORE SIGNING.

**I. ARBITRATION AGREEMENT**

The undersigned Buyer and Seller, voluntarily WAIVE ANY RIGHT TO A JURY TRIAL, and further agree as follows:

(1) That the motor vehicle described in this sale document has been located as traveling in interstate commerce and has an impact upon interstate commerce.

(2) That in the event of any dispute(s), between the parties hereto or in the event of any dispute(s) arising out of or related to this contract, (including but not limited to the terms of the agreement, the condition of the motor vehicle sold, the conformity of the motor vehicle sold to the contract, the representations, promises, undertakings or covenants made by Seller, Inc. in connection with the sale of the motor vehicle, or otherwise dealing with a motor vehicle, any terms of financing in connection therewith, or any terms of any credit life and/or disability insurance purchased simultaneously herewith, or extended service or maintenance agreements), that Seller, and the purchaser agree to submit such dispute(s) to binding arbitration, pursuant to the provisions of 9 U.S.C. 1, et. seq. and according to the commercial rules of the American Arbitration Association then existing in Alabama.

(3) That in the event any dispute arises between purchaser and seller, its officers, agents and employees, the said dispute will be submitted to binding arbitration pursuant to 9 U.S.C. et seq. and according to the commercial rules of the American Arbitration Association then existing in Alabama.

(4) (A) That in the event any dispute arises between the parties, as to the conformity or condition of the motor vehicle, the parties will permit a third party (to be mutually agreed upon), to inspect the motor vehicle to determine its conformity and condition, and that the findings of such third-party shall be binding upon Seller, and the purchaser, in connection with any litigation, arbitration or request for adjudicant, pursuant to the provisions of the 1975 code of Alabama.

(B) In the event Seller and the purchaser cannot agree upon a third-party to conduct such inspection, either party shall have the right to petition any court of competent jurisdiction, or panel or arbitrators, to appoint an expert to act as such third party.

(C) The cost of such third-party inspection shall be borne equally by Seller and the purchaser or as may be directed by any court or panel of arbitrators.

(5) This Arbitration agreement constitutes part of your retail buyers order.

**II. DOCUMENTARY FEE DISCLOSURE:**

There is a documentary fee included on the sales contract as part of the total price the customer agrees to pay for the purchase of a vehicle from the dealership. A documentary fee is also sometimes referred to as a "make ready fee," "Administrative fee" or as a "clerical fee." These terms are used interchangeably.

The documentary fee is designed to cover any expenses incurred by the Seller in the upkeep of each vehicle prior to its sale. It is also intended to cover fees for dealing with notarizing the documents prepared for each transaction for up to seven years from that date. The Documentary fee is not imposed as a condition of our incident to the extension of credit. It is not part of the finance charge, if any. It may be included in the cash price or it may be included in other charges" is the event your vehicle is financed. The documentary fee is assessed regardless in the fact that your vehicle purchase is a cash or credit transaction. Documentary fees are retained entirely by the dealership. If you have not paid the documentary fee in cash, then the documentary fee will be included as part of the amount financed. However, the documentary fee does not fall within the finance charge designation in that these fees are not charges payable directly or indirectly by the customer and imposed directly or indirectly by the dealership as anyone else as incident to a condition of the extension of credit.

The customer expressly agrees and acknowledges that the customer has freely, knowingly and willingly agreed to pay the documentary fee as part of the total purchase price of customer's vehicle.

Purchaser hereby acknowledges that he/she has read this disclosure and agrees to the documentary fee described.

**III. BAILMENT AGREEMENT**

If the vehicle described on the front of this buyers order was purchased on an installment payment plan, this vehicle is being delivered PENDING FINANCIAL APPROVAL, by lender or lenders as a convenience to the buyer or buyers, and is subject to all terms and agreements of the said contract. The Seller has all the rights to the said vehicle until the loan terms and conditions have been approved by the lender or lenders. Upon loan denial or condition approval to which the purchaser cannot conform to the condition, Purchaser(s) shall promptly (within 24 hours of loan denial) return the said vehicle to the Seller in the original condition. Purchaser(s) shall be liable for any damage, destruction, or abuse to the said vehicle until inspected by the Seller. Therefore, I UNDERSTAND THAT THIS VEHICLE IS BEING DELIVERED SUBJECT TO FINANCIAL APPROVAL.

**IV. YIELD SPREAD / ASSIGNMENT FEE**

If the vehicle is financed, dealer may be paid by the assignee of the contract an assignment fee. Seller may also be paid a yield-spread premium representing the difference between the Sellers discounted interest rate and the purchaser's rate interest.

**IV. AFFIDAVIT OF DAMAGE TO VEHICLE SOLD**

In connection with my purchase from Seller, I hereby acknowledge the following.

(1) That Seller, its agents and salespeople, made no statement or representations to me that the above referenced motor vehicle has not been wrecked or that it has not been damaged. Seller hereby discloses that this vehicle has most likely been damaged in some way and in certain cases may have even been deolored a total loss or salvaged. As Seller does not inspect the vehicle for any type of prior damage, Seller hereby recommends that the purchaser have the vehicle inspected prior to the purchase.

(2) That purchaser, prior to consummation of purchase, was invited to have the motor vehicle inspected by an expert independent of Seller and, unless noted otherwise. Purchaser did not choose to have the vehicle inspected.

(3) That the above referenced motor vehicle is sold AS IS, WHERE IS, AND WITH ALL FAULTS.

**VI. DISCLOSURE OF PRIOR USE OF VEHICLE**

___ **COMPANY VEHICLE / EXECUTIVE VEHICLE / FACTORY EXECUTIVE VEHICLE**
Vehicle was used by the manufacturer, its subsidiary/affiliate or an employee of the manufacturer or subsidiary/affiliate for commercial or personal use, testing and/or demonstration. Seller makes no representations as to the specific prior use of the vehicle.

___ **DEMONSTRATOR**
Vehicle was used by Dealer or Dealer's employees for demonstration purposes and may have been used for personal or business travel. The vehicle has not been sold or leased to a retail customer.

___ **PROGRAM VEHICLE / OFF-LEASE/RENTAL VEHICLE**
Vehicle was previously sold or leased by the vehicle by the manufacturer to a rental company, fleet account or individual. Dealer makes no representation as to the specific prior use of the vehicle.

___ **TRADE-IN VEHICLE**
Vehicle was obtained by dealer in a transaction in which a company or individual purchases another vehicle from dealer. Dealer makes no representation as to the prior use of the vehicle.

___ **WHOLESALE VEHICLE**
Dealer purchases vehicle from another dealer or at an auction. Dealer makes no representation as to the prior use of the vehicle.

___ **BUYBACK VEHICLE**
Vehicle was repurchased by the manufacturer and/or dealer because the owner was dissatisfied with the vehicle. Dealer makes no representations as to the specific prior use of the vehicle.

___ **SPOT DELIVERED VEHICLE**
Dealer previously arranged for the sale of the vehicle but accepted a return of the vehicle because financing was denied unless otherwise noted.

___ **OTHER** _____

**VII. ACKNOWLEDGMENT OF DISCLOSURE OF KNOWN DAMAGE TO VEHICLE**
In connection with the purchase of the vehicle described on the reverse side of this agreement, I acknowledge that Seller has disclosed the following known damage.

_____

I acknowledge that this damage is acceptable and if the damage was repaired it was repaired to my satisfaction. Seller makes no representations as to other damage.

**VIII. AS IS-NO WARRANTY**
I understand that the vehicle I am purchasing is sold "AS IS-NO WARRANTY" by the Seller. Seller bases your price on their investment in the vehicle and does not add to your price an amount to cover future contingencies. Therefore Seller is not responsible for any repairs or reconditioning on conditions existing at the time of purchase or developing after the purchase, other than those specified on the "WE OWE" form.

**IX. DISCLOSURE OF DAMAGE TO TRADE-IN OR PURCHASED VEHICLE**
The undersigned is this day selling to Dealer the vehicle described above as the trade in. As a condition to purchase the trade-in by Dealer, the Purchaser hereby represents and warrants to the dealer that to the knowledge the vehicle has never been wrecked or damaged in any way, and that it has never been subject to any body or structural repair greater than $500 unless noted otherwise.

_____

The Purchaser hereby agrees to indemnify and hold harmless, and its demand to reimburse Dealer, its affiliates, officers, directors, agents, servants, and employees, from any and all liability, loss, damages, actions, causes of action, claims and expenses, including, without limitation to, costs of court and attorney fees, arising out of or related to the losses and omission of the vehicle prior to its purchase by Dealer or relating to any claim or assertion that the vehicle has received prior damage or injury and that said prior damage or injury has not been disclosed in the subsequent buyer of purchaser's trade-in.

## WARNING: DO NOT SIGN UNTIL YOU HAVE READ AND AGREE WITH ALL THE ABOVE TERMS AND UNDERSTAND THAT YOUR PURCHASE TRANSACTION WILL BE GOVERNED BY THESE TERMS.

PURCHASER(S) SIGNATURE _____ DATE _10/27/05_

PURCHASER(S) SIGNATURE _____ DATE _____